UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

JOHN MCBRIDE and
KATHY MCBRIDE                                   Case No. 11-03190-MAM-13

    Debtors

ORDER DECLARING THAT HOLMES MOTORS, INC. VIOLATED THE
AUTOMATIC STAY

    Tyler Scott, Attorney for Debtors, Mobile, AL
    Stephen Dummer, Attorney for Holmes Motors, Inc., Gulfport, MS

This case is before the Court on the Debtors' motion seeking to have Holmes Motors, Inc., show cause why it was not in violation of 11 U.S.C. § 362(a) of the Bankruptcy Code and, in conjunction with such a violation, why Holmes Motors, Inc. should not be required to pay damages to debtor Kathy McBride. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is granting the debtors' show cause motion and declaring that Holmes Motors did violate the automatic stay.

FACTS

Kathy and John McBride filed this chapter 13 case on August 8, 2011. On August 10, 2011, Holmes Motors, Inc. repossessed the 2009 Chrysler PT Cruiser that Kathy McBride had possession of on the day of the bankruptcy filing. Holmes Motors and the McBrides dispute whether Ms. McBride was a lessor of the vehicle or whether she was the owner subject to a security interest in Holmes Motors. Holmes further claims that Ms. McBride had no interest at

1

all in the auto as of the filing date due to her prepetition default in payments under their agreement.

On October 23, 2010, Kathy McBride entered into a "Closed End Motor Vehicle Lease" with Holmes Motors, Inc. for the PT Cruiser. She paid $2000 down of which $1242 constituted a "capitalized cost reduction." The remaining sum paid a $500 refundable security deposit, the first $185/biweekly payment and several fees and expenses. Under the lease she was to pay $185 twice each month for 78 payments. The lease has a $5 late fee charge for late payments. McBride's lease contains an option to purchase the vehicle after the 78 payments for $1981.51 with the payment of a $500 purchase option fee. The lease contains a paragraph which states (in bold):

> NOTICE TO THE LESSEE: YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHACE (sic)

The lease states that a lessee is in default if any payment is not made when it is due. If there is a default, the lessee "authorize[s] us (Holmes) to enter any property where the Vehicle may be to take possession of it and remove it." The lease contains a paragraph that says Holmes Motors does not "waive our rights or remedies under this Lease by failing to exercise them at any time."

Holmes introduced as its Exhibit B a "Collections Policy" that the Chief Operating Officer and General Manager stated was given to all lessees at the closing of the lease. It states:

1. PAYMENTS ARE DUE ON THE CONTRACTUAL DUE DATE-NO EXCEPTIONS
2. PAYMENTS ONE DAY LATE ARE SUBJECT TO IMMEDIATE REPOSESSION (sic) BY LAW, AND A $500 REPOSESSION (sic) FEE

* * * * *

4. IF PAYMENT IS LATE, ALL REFERENCES ARE SUBJECT TO BE CONTACTED (sic).

* * * * *

2

6. REPEATED SLOW PAY, OR REPOSESSIONS (sic) WILL
BE REPORTED TO THE CREDIT BUREAU.

After her bankruptcy filing, Ms. McBride called Holmes Motors to tell them she had filed bankruptcy and to give them her bankruptcy case number. Her attorneys had instructed her to do so. She called them on August 9, 2011. According to Ms. McBride, Holmes did not take the bankruptcy case number from her when she called. Holmes Motors acknowledges that McBride called it, but disregarded the information because of Ms. McBride's prior calls to them with information that Holmes believed was untrue or promises that McBride never completed. On August 10, 2011, the car was repossessed.

At filing, Ms. McBride had not made her second payment in July 2011. Her first payment in July was made with a check which was returned for nonsufficient funds. That check was replaced but the second payment for July was not made. The Court is unsure from the evidence if the payment due on or about August 6 was made. Although the Court is not sure of the exact amount owed, there is no dispute that there was some default in payment at the time of the bankruptcy filing and the repossession. McBride had been in default in January 2011 and had the car repossessed but had paid whatever had been required to have the lease reinstated.

In their bankruptcy schedules, the McBrides listed Holmes Motors as a secured creditor with a lien on the PT Cruiser. They did not list the lease on Schedule G which is the schedule on which executory contracts, including leases, would be listed. The McBrides had not filed a § 521 statement of intentions at the time of the repossession. Their chapter 13 plan listed a payment of $340 per month to Holmes Motors, Inc. at 5% for the life of the plan as payment for a debt "Secured by Collateral."

Ms. McBride has missed 2 days of work at $149/day due to the repossession and this trial. The McBrides rented 2 different vehicles as replacement transportation since the

3

repossession. A vehicle from Eastern Shore Toyota cost $609.90 for 2 weeks of rental. A second vehicle cost $160.88 for a 1 week rental. Ms. McBride has incurred attorneys fees. She also claims that missing work on August 11, 2011 meant she missed a workshop and , as a teacher, "no price can be put on it." She also claims she should be compensated for aggravation and embarrassment.

Holmes, as stated above, does not dispute that McBride called and informed it of her bankruptcy filing. It did not believe anything she said according to the COO due to McBride's repeated untrue or unfulfilled promises and statements. In proceeding with the repossession, Holmes also relied upon a decision by a bankruptcy judge in the Southern District of Mississippi. Order, *In re Williams*, Case No. 11-50077-KMS (Bankr. S.D. Miss. March 1, 2011) (copy not provided to court). She had ruled that the Holmes lease was a true lease and not a security interest and had allowed Holmes to keep an auto it had repossessed prepetition when the debtor filed a motion for turnover of the vehicle.

LAW

This is a motion seeking damages for violation of the automatic stay. The applicable Bankruptcy Code provision is 11 U.S.C. § 362(k). It states that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The burden of proving that a violation has occurred and that damages should be awarded is on the debtors. *Heghmann v. Indorf, et al. (In re Heghmann)*, 316 B.R. 395, 404-05 (B.A.P. 1st Cir. 2004). They must prove their case by a preponderance of the evidence. *Id.*

Section 362(a) (3) states that the automatic stay precludes "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the

4

estate." In this case, the section raises three issues that must be decided. First, is the automobile itself property of the estate? Two, if it is not, is the lease property of the estate? Three, if the auto and lease are not property of the estate is the debtor's possession of the vehicle at filing enough to trigger the stay? After the three issues are decided, the Court must then look to whether there has been a violation of the stay.

A.

Whether the PT Cruiser is property of the estate hinges upon whether Holmes Motors has a true lease or whether its lease agreement creates a disguised security interest. The lease does not state what state law governs the parties' agreement. Either Mississippi or Alabama law applies. Holmes Motors is located in Mississippi and the agreement was signed there. Ms. McBride resides in Alabama and that is where the auto was located prior to its repossession. "Alabama law follows the traditional conflict-of-law principle of *lex loci contractus*." *Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala.2009). "Mississippi uses a 'center of gravity' test to resolve choice of law issues related to contracts." *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp*, 743 So. 2d 954, 959-60 (Miss. 1999) (quoting *Sheppard Pratt Physicians, P.A. v. Sakwa*, 725 So. 2d 755, 757 (Miss. 1998)). The test requires a court to look at 5 factors: (1) where the contract was signed (2) where the contract was negotiated (3) where the contract was performed (4) where the subject matter of the contract is; and (5) where the parties to the contract are. *Id.* Both of these choice of law provisions favor use of Mississippi contract law. It does not matter which law is used to decide the issue however because both Alabama and Mississippi have similar law on the subject. Mississippi Code § 75-1-201 states that whether "a transaction in the form of a lease creates a 'security interest' is determined pursuant to Section 75-1-203" of the Mississippi Code. Alabama Code § 7-1-203 is

5

an identical provision. The provision that both parties cited to as determinative of the issue was Mississippi Code § 75-1-203(b)(4) and Alabama Code § 7-1-203(b)(4). They state that a lease transaction creates a security interest if "the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement." *Id.* McBride must pay $1981.51 at the end of the lease for the car. This is approximately 13% of the agreed value of the vehicle as of October 23, 2010. Cases have concluded very low payments are "nominal consideration." *E.g. In re 20th Century Enterprises, Inc.*, 152 B.R. 119 (Bankr. N.D. Miss.1992) (finding $100 after payment of $850,000 was nominal. One case found that a payment of 13-14% of the value of a vehicle at the time of the exercise of the option to purchase was nominal. *In re Bailey*, 326 B.R. 156 (Bankr. W.D.Ark. 2005). The *In re Winston* case, 181 B.R. 589, 594(Bankr. N.D. Ala. 1995) catalogued cases about nominal consideration. For consideration to be nominal, the amount must be so low a person would most likely exercise the option and/or the amount bears no relation to fair market value at the time of exercise. *Id.*, 181 B.R. at 592. In reviewing the *Winston* case, it is clear that the debtor had an argument that the consideration was nominal. In 6 ½ years, the car would have some value. Whether $1981 would be a fair market value at that time or be more than the value is not clear. The debtors' contentions were not frivolous. "The real yardstick in determining whether the option price is nominal or substantial would appear to hinge on whether that price bears a resemblance to the fair market price of the article." *Id*. Without a hearing by this Court on values, neither the debtor nor creditor could be sure of what the court would hold. This Court has issued no published rulings on this point. Based upon the case law and the facts of this case, the Court concludes that the lease is a true lease. The debtor

6

Case 11-03190    Doc 20    Filed 09/06/11    Entered 09/06/11 15:34:05    Desc Main
Document    Page 6 of 12

did not have an ownership interest in the vehicle itself and the vehicle was not property of the estate. However, the debtor did have a legitimate argument as to its claim of a security interest.

B.

The next issue is whether the lease was a property interest of the debtor. Under section 541 of the Bankruptcy Code, property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." "Property interests in bankruptcy are created and defined by state law." *Butner v. U.S.,* 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979). A lease is a property interest that is covered by 11 U.S.C. § 541. *In re Moore*, 290 B.R. 851 (Bankr. N.D. Ala. 2003); *In re Mr. Gatti's, Inc.*, 162 B.R. 1004 (Bankr. W.D. Tex. 1994). Only unexpired or unterminated leases however are covered. *Id.* In this case, Holmes asserts that McBride's lease was terminated before the filing of the bankruptcy by her payment default as of July 2011. The lease has provisions that make when a termination occurs less than clear. The lease contains a late fee charge. If the lease was actually terminated upon default, there would be no grounds for a "late" fee. Also, in McBride's case, she knew that Holmes had reinstated her after a supposed termination in January 2011. However, the lease did not require any notice to the lessee prior to a default being in effect according to the document. The Court concludes that the preponderance of the evidence is that the lease terminated upon default—at least in a case such as this where payment was over 15 days late. However, because of the ambiguities in the contract and the prior treatment of McBride when she defaulted, McBride had a legitimate argument as to whether the lease was terminated prepetition and, therefore, as to whether the lease was property of the estate subject to the automatic stay.

C.

The third issue is whether McBride had a possessory interest in the auto sufficient to invoke a section 362(a)(3) stay of an action "to obtain possession of property from the estate." This section of Section 362 does not require that the property against which the creditor seeks to act be "property of the estate." The focus is actions to take possession of property from the estate, regardless of the property's ownership. The recent case of *In re Moore*, 419 B.R. 93, 103-04 (Bankr. N.D. Ga. 2011) discussed this issue in dicta.

> Many courts have observed that the automatic stay applies to prevent a party from seeking possession of real estate in a debtor's possession at the time of the filing of the case, even if the debtor has no legal basis for possession. Other courts, however, have concluded that the phrase 'property from the estate' in § 362(a)(3) encompasses 'property in the possession or control of the trustee or the debtor-in-possession, but only to the extent the trustee or debtor-in-possession has a good-faith, colorable claim to possession or control of the property.
>
> Courts have taken both approaches in the context of personal property. One view is that the automatic stay applies when the debtor has possession, but not title, to a motor vehicle. The more limited approach is that a debtor 'should, at the very least, demonstrate some good-faith, colorable claim to or basis for possession of property in order to trigger application of the automatic stay where the estate's interest in the property arises solely through possession.
>
> Courts concluding that the debtor's possession or property alone, even without a legal basis for it, is sufficient to invoke the automatic stay have noted that a contrary determination would interfere with the orderly administration of bankruptcy cases and undermine the bankruptcy court's authority to determine whether the property is property of the estate and whether the stay applies. (Citations omitted).

The court concludes that McBride did have a colorable argument that the lease was a security interest and/or that the lease had not terminated. Therefore, section 362(a)(3) did apply. Even Holmes Motors' own Circuit Court of Appeals – the Fifth Circuit - has held that, when property

8

is arguably property of the estate, a creditor acts at its peril when it seizes first and adjudicates later. *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 304 (5th Cir. 2005). The Court stated:

> We must determine how bankruptcy law treats the unilateral seizure of arguable property [of the estate]. The policy and structure of the Bankruptcy Code suggest that the stay covers at least some arguable property. First the automatic stay has broad application. . . This breadth suggest Congressional intent that, if the face of uncertainty or ambiguity, courts should presume protection of arguable property.
>
> * * * * *
>
> [A] retroactive classification of the property to shape the scope of the stay would encourage creditor abuse. Knowing a debtor is in a difficult pecuniary condition and may not be able to vindicate his rights . . . a creditor could simply seize arguable property without fear of later judicial retribution. Or the creditor could gamble that a court would accept potential legal arguments long after [repossession] . . . when the harm may be more difficult to remedy. Given that in some instances arguable property is, in fact, the debtor's property, these outcomes increase the probability that the debtor will be permanently deprived of his wrongfully seized assets.

The court concludes that the colorable claim of McBride to the existence of a security interest or a curable lease were sufficient to invoke the protection of section 362(a)(3).

D.

In light of the colorable claims of McBride as to the existence of a security interest instead of a true lease and the colorable claim that the lease was not terminated but curable after the default, the court concludes that Holmes Motors, Inc., violated the stay. The Court must now determine whether that violation was willful. A willful violation occurs when the creditor knows of the stay and intentionally commits an act violating the stay. *Hodge v. The Money Shop, LLC (In re Hodge)*, 367 B.R. 843, 847 (Bankr. M.D. Ala. 2007). In this case, Holmes Motors and the debtor agree that the debtor contacted the lessor to alert it to her bankruptcy filing. Holmes Motors did nothing with that information except disregard it. Failure to inquire

9

of the bankruptcy court whether there was a filing is not excusable after being put on notice. Then, Holmes Motor intentionally acted by repossessing McBride's car.

Holmes other excuse is that it had received an order from a bankruptcy judge in the Southern District of Mississippi that held that its lease was a true lease and did not require Holmes Motors to turn over the car to the debtor after it was repossessed prebankruptcy. It relied on this authority to take its actions. This was also not sufficient to make Holmes Motors actions without fault. First, one bankruptcy judge's decision in the Southern District of Mississippi is not binding on a judge sitting in another state in another circuit. Second, the decision is distinguishable. Holmes had apparently repossessed the car prepetition and then refused to turn the car over to the debtor postpetition when the debtor sought to reclaim it. If those facts were the facts in this case, the decision would be the same as the judge's in Mississippi. In fact, an 11th Circuit Court of Appeals decision would require that result. *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir. 1998). Who had possession of the vehicle at filing is a crucial distinction. Therefore, Holmes Motors did act willfully to violate the stay of the McBrides. It acted with full knowledge of a bankruptcy filing.

Section 362(k)(2) of the Bankruptcy Code allows a creditor to escape an award of more than actual damages in a stay violation context if the creditor acted "in the good faith belief that subsection (h) [of section 362] applies to the debtor." Section 362(h) states that if a debtor fails to file a statement of intentions timely pursuant to section 521(a)(2), the stay is terminated as to all property not listed. If a creditor acts after the expiration of the filing period for the statement, then the creditor is not liable for any more than actual damages. In this case the debtor has not filed the statement of intention as to what they intend to do with the auto lease (or security

10

Case 11-03190    Doc 20    Filed 09/06/11    Entered 09/06/11 15:34:05    Desc Main
Document      Page 10 of 12

interest as they saw it before this opinion). However, the form does not need to be filed by the debtors until September 7, 2011. Therefore, Holmes Motors acted before it could use this defense.

The debtors incurred rental expense of $770.78. These are actual damages resulting from the stay violation. Ms. McBride lost pay of $298 and these are actual damages. The debtor did not prove any further damages other than "aggravation and embarrassment." Courts require more than "generalized assertions." *Young v. Repine (In re Repine)*, 536 F.3d 512, 521-22 (5th Cir. 2008). These statements are too vague to be compensable. The Court will allow the debtors to recover reasonable attorneys' fees and costs upon the filing of an affidavit detailing the amount. Holmes Motors will be given the right to object and have a hearing if necessary.

Finally, the Court must determine if punitive damages should be allowed. Section 362(k)(1) states that they are available 'in appropriate circumstances." The Court concludes that $5,000 of punitive damages should be awarded. The sum is sufficient to be a deterrent to Holmes Motors taking actions without assessing the consequences in the future. The sum is not so large as to constitute a financial threat to the company. As the Fifth Circuit stated, the stay must be broadly interpreted to prevent creditor abuses. The cost and slight delay of seeking relief from the bankruptcy court before taking questionable actions is a small cost to make the entire system work for debtors and creditors.

IT IS ORDERED that the motion of the debtors is GRANTED and the debtors are awarded $1068.78 in actual damages and $5000 in punitive damages from Holmes Motors, Inc. The debtors' attorneys shall file an affidavit by September 19, 2011 stating the amount of attorneys' fees debtors have incurred. Holmes Motors, Inc. shall file an objection to the fees, if

11

any, by September 30, 2011. A hearing will be held on any objection filed on October 5, 2011 at 10:30 a.m. After that date, a final order will be entered in the matter.

Dated:   September 6, 2011

                                                            /s/ Margaret A. Mahoney
                                                            MARGARET A. MAHONEY
                                                            CHIEF U.S. BANKRUPTCY JUDGE